UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELIA WAKEFIELD, individually and as executor of the estate of Charles T. Wakefield, deceased, and as Trustee of the Wakefield Family Trust Dated April 23, 1997,<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL FINANCIAL PRIVATE CAPITAL, LLC, a Florida limited liability company, and G.F. INVESTMENT SERVICES, LLC, a Florida limited liability company,<br><br>Defendants. | Case No.: 15cv0451 JM(JMA)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM [Rule 12(b)(6)]** |

Defendants Global Financial Private Capital, LLC ("Global Financial") and G.F. Investment Services, LLC ("G.F. Investment") (collectively, "Defendants") filed a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Motion") on March 11, 2015. (Doc. No. 7). On April 6, 2015, Plaintiff Celia Wakefield, individually and as executor of the estate of Charles T. Wakefield, deceased, and as Trustee of the Wakefield Family Trust Dated April 23, 1997 ("Trust"), filed an opposition to Defendants' motion ("Opposition"). (Doc. No. 12).

On April 13, 2015, Plaintiff filed a reply ("Reply"). (Doc. No. 13). On July 18, 2015, the court denied the motion without prejudice. (Doc. No. 20). On September 22, 2015, the court received and accepted the parties' stipulation that California law should apply to this case and govern the legal issues raised by Defendants' motion, and took Defendants' motion under resubmission for a ruling on the merits. (Doc. No. 35).

The matters were fully briefed and were found suitable for resolution without oral argument pursuant to Local Rule 7.1(d)(1). For the reasons set forth below, the court denies Defendants' motion to dismiss.

## BACKGROUND

On February 2, 2015, Defendants removed this action from the Superior Court for the State of California based upon diversity jurisdiction under 28 U.S.C. §§ 1332, 1441(d), and 1446. The Complaint, filed on December 9, 2014, alleges eight causes of action for (1) breach of fiduciary duty; (2) violation of the California Consumer Legal Remedies ("CLRA"); (3) tort of another claim for attorney's fees; (4) elder abuse (Welfare and Insts. Code § 15610, et. seq.); (5) unfair business practices (Cal. Bus. and Prof. Code § 17200); (6) breach of contract; (7) breach of duty to supervise; and (8) declaratory relief.

In mid-summer 2007, Plaintiff and her late husband, Charles T. Wakefield, (collectively, the "Wakefields") attended a free financial seminar presented by Mr. Reid Johnson. On July 18, 2007, the Wakefields entered into an agreement with Reid Johnson, through his company The Planning Group of Scottsdale, LLC, and a WRAP fee investment advisory contract with Global Financial.[1] Plaintiff alleges that Johnson was an agent of Global Financial. At the time, Plaintiff was in her late 80s and Charles T. Wakefield was in his late 70s.[2]

---

[1] WRAP fee agreement permits the investment advisor to charge a percentage of the overall client assets being managed. Investopedia, http://www.investopedia.com/terms/w/wrap-fee.asp (last visited October 30, 2015).

[2] Charles T. Wakefield died at age 80, and Mrs. Wakefield is currently 93 years old.

In essence, Plaintiff alleges she and her husband were advised to sell their investments and to reinvest the proceeds in a series of unsuitable investments and insurance transactions that caused the Wakefields harm. (Compl. ¶¶ 29, 40). Plaintiff alleges damages of about $1.6 million. (Compl. ¶49). Plaintiff also alleges that Johnson, the advisor, failed to disclose material adverse information, including that he owed about $11 million in taxes to the IRS. (Compl. ¶25). In broad brush, Plaintiff alleges that Defendants failed to adequately supervise Johnson and caused her harm.

This action is related to an earlier filed action that commenced on April 30, 2013, in the Superior Court for the State of California, County of San Diego (<u>Wakefield v. Reid Stuart Johnson, et al.</u>, Case No. 37-2013-000-046502-CU-FR-CTL, the "Johnson Action"). The thrust of the Johnson Action is that Johnson, the financial advisor, breached fiduciary duties to Plaintiff and violated several state consumer statutes. The state court complaint does not identify any role played by Global Financial and/or G.F. Investment in the underlying misconduct. Following mediation, on February 21, 2014, the Johnson Action settled.

After the Johnson Action settled, Plaintiff's counsel discovered the existence of the relationship between the Wakefields and Defendants. After Mr. Wakefield passed away in 2010, Plaintiff had no recollection that she and her husband had entered into a separate contract with Defendants. Neither Plaintiff nor her counsel were allegedly aware that there existed an advisory contract with Global Financial. (Compl. ¶ 45, 46).

On December 8, 2012, Plaintiff's counsel sent a letter to Global Financial requesting copies of relevant documents. Plaintiff's counsel did not receive a response to this letter. (Compl. ¶43). On June 14, 2013, counsel for Johnson in the Johnson Action provided a copy of the Global Financial WRAP contract to Plaintiff. (Compl. ¶47). Plaintiff alleges that she recently learned of the role of G.F. Investment in the alleged wrongdoing. (Compl. ¶48).

///

///

**Motion to Dismiss**

Defendants bring the motion to dismiss based on the ground that the dismissal with prejudice as to Johnson in the Johnson Action operates as *res judicata* for purposes of this action and these Defendants. (Motion, p. 3). Defendants claim that Plaintiff is alleging the same damage claims based on the same alleged conduct of Johnson in this matter as in the Johnson Action, claiming that Johnson was an authorized agent of Defendants. (Id.). Defendants argue that "California law is clear that a dismissal with prejudice of a named party defendant exonerates that party for all such claims and operates as *res judicata*," and that "the exoneration of an alleged agent [Johnson] exonerates the alleged principals [these two Defendants] as a matter of law, and Plaintiff has no claims against these two Defendants." (Id.). Defendants also submit that Plaintiff's settlement and dismissal of the Johnson Action with prejudice constitutes *retraxit* – a final judgment on the merits – and thus operates both as *res judicata* and collateral estoppel.

Plaintiff opposes Defendants' motion on the following grounds: (1) the settlement and dismissal of the Johnson Action operates neither as *res judicata* nor as collateral estoppel because there was no final judgment on the merits; (2) the dismissal did not "exonerate" Johnson; (3) the prior settlement and dismissal is not an estoppel in this case; (4) there is no privity or substantial identity between Johnson and Defendants, and Defendants are not third-party beneficiaries; (4) there is no *retraxit* for Defendants in this case because they are not in privity with Johnson; (5) the cases cited by Defendants are distinguishable; (6) suing Johnson separately in the prior case did not split a cause of action presently asserted against Defendants; (7) the claims in this case are different and none of them were litigated and determined in the prior action so as to give rise to issue preclusion in this case; and (8) policy considerations and basic fairness require denial of the motion.

///

///

4

# LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the pleadings. To overcome such a motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Facts merely consistent with a defendant's liability are insufficient to survive a motion to dismiss because they establish only that the allegations are possible rather than plausible. See id. at 678–79. The court should grant relief under Rule 12(b)(6) if the complaint lacks either a cognizable legal theory or facts sufficient to support a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

When ruling on a motion to dismiss, the court must take all allegations as true and construe them in the light most favorable to the plaintiff. See Metlzer Inv. GMBH v. Corinthian Colls., Inc., 540 F.3d 1049, 1061 (9th Cir. 2008). "Review is limited to the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." Id.

Federal Rule of Civil Procedure 15 provides that courts should freely grant leave to amend when justice requires it. Accordingly, when a court dismisses a complaint for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (internal quotation marks omitted). Amendment may be denied, however, if amendment would be futile. See id.

# DISCUSSION

## A. Request for Judicial Notice

In their motion, Defendants ask the court to take judicial notice of Plaintiff's

Notice of Entry of Dismissal with Prejudice filed electronically on July 3, 2014 in San Diego Superior Court in the case entitled Wakefield v. Johnson et al., Case No. 37-2013-00046502-CU-FR-CTL (Doc. No. 7-2, Exh. A).  In her opposition, Plaintiff also asks the court to take judicial notice of the following items: (1) Complaint for Elder Abuse Damages and Other Relief, San Diego Superior Court Case No. 37-2013-00046502-CU-FR-CTL filed on April 30, 2013 [with Exhibits 1-22]; (2) Petition to Compel Arbitration filed in San Diego Superior Court, Case No. 37-2013-00046502-CU-FR-CTL; (3) Minute Order Denying Petition to Compel Arbitration in Case No. 37-2013-00046502-CU-FR-CTL, dated 9/27/2013; (4) Order Staying Case Pending Appeal of Denial of Arbitration in San Diego Superior Court Case No. 37-2013-00046502-CU-FR-CTL; (5) Register of Actions for San Diego Superior Court Case No. 37-2013-00046502-CU-FR-CTL; (6) Settlement Agreement between Johnson (and others) and Plaintiff filed in Support of Good Faith Determination in San Diego Superior Court Case No. 37-2013-00046502-CU-FR-CTL; (7) Order Finding Johnson Settlement to be in Good faith in San Diego Superior Court Case No. 37-2013-00046502-CU-FR-CTL; and (8) Complaint against Plaintiff filed in Arizona Superior Court for Maricopa County, Case No. CV2013-053095.  (Doc. No. 12-2, Exh. 1, 3-9).

      Federal Rule of Evidence 201 provides that courts may take judicial notice of facts that are not subject to reasonable dispute because they are generally known or are capable of accurate and ready determination.  See Fed. R. Evid. 201(b).  The court may take notice of such facts on its own, and "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c).  Matters of public record are proper subjects of judicial notice, but a court may take notice only of the existence and authenticity of an item, not the truth of its contents.  See Lee v. City of Los Angeles, 250 F.3d 668, 689–90 (9th Cir. 2001).  Under these rules, courts may take judicial notice of "the records and reports of administrative bodies." United States v. Ritchie, 342 F.3d 903, 909 (9th Cir. 2003) (quotation marks omitted).

      Plaintiff and Defendants do not oppose each other's requests for judicial notice,

and the court finds that these items are appropriate for judicial notice because they are matters of public record and the parties do not dispute their authenticity. The court, therefore, grants the requests for judicial notice filed by Plaintiff and Defendants.

### B. The Affirmative Defense of *Res Judicata*

"Ordinarily affirmative defenses such as *res judicata* may not be raised by motion to dismiss, C. Wright & A. Miller, Federal Practice and Procedure, § 1277, at 328-30, but this is not true when . . . the defense raises no disputed issues of fact." Scott v. Kuhlmann 746 F.2d 1377, 1378 (9th Cir. 1984). See also Roberts v. United States, 423 F. Supp. 1314, 1316 (C.D. Cal. 1976) ("[T]he motion to dismiss on the basis of res judicata is properly before the court."). As stipulated by parties, the court applies California substantive law to this motion. Additionally, Defendants have the burden of proof on this affirmative defense. The burden of proving that the elements of *res judicata* have been met is upon the party seeking to assert it as a bar or estoppel. Vella v. Hudgins, 20 Cal.3d 251, (1977).

The doctrine of *res judicata* gives certain conclusive effect to a former judgment in subsequent litigation involving the same controversy. See Boeken v. Philip Morris USA, Inc., 48 Cal.4th 788, 797 (2010). *Res judicata* has two aspects. Id. In its "primary aspect," commonly known as claim preclusion, the prior judgment operates as a bar to the second suit between the same parties on the same cause of action. Id. In its "secondary aspect," commonly known as collateral estoppel, the prior judgment operates as an estoppel as to such issues in the second action as were actually litigated and determined in the first action. Id. (internal citations omitted). The prerequisite elements for applying the doctrine of *res judicata* to either an entire cause of action or one or more issues are the same: (1) a claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding. Id.

///

...

### 1. *Res Judicata*/Claim Preclusion

Defendants first argue that Plaintiff's suit is barred by the primary aspect of the doctrine of *res judicata*, claim preclusion. First, Defendants argue that Plaintiff's settlement and voluntary dismissal of the Johnson Action with prejudice constitutes a final judgment on the merits, barring the current action. Second, Defendants argue that the doctrine of *retraxit*, a concept in California law, also applies to this case. Third, Defendants claim that Plaintiff alleges the same damage claims here she alleged against Johnson in the Johnson Action, and that "the only difference in both actions is that [Plaintiff] now alleges 'Johnson acted as an authorized agent of Defendants.'" (Motion, p. 6, citing Compl. ¶¶ 15-18). Finally, Defendants argue that the exoneration of an alleged agent – here, Johnson, also exonerates the alleged principals – Defendants, and as such, Plaintiff has no claims against Defendants in this action.

Plaintiff counters all of Defendants' points by making the following arguments. First, the dismissal of the Johnson Action does not constitute a final judgment on the merits as the settlement agreement in the Johnson Action "was of limited scope, only applying to certain parties." (Opposition, p. 11). Second, the doctrine of *retraxit* does not apply because Defendants in this case were not in privity with Johnson. Third, the claims alleged in the current case are not identical to the claims in the Johnson Action, because this action is based on a different written contract, different Defendants, and a different theory of liability. For example, "the claim that the Defendants failed to supervise Johnson is made for the first time in this case." (Id. at 34). Plaintiff claims that "Defendants in this case are brokerage houses and they had a duty to supervise Johnson for the protection of Plaintiff," and that Defendants' failure to fulfill this duty subjects them to direct liability, not vicarious liability based on Johnson's status as Defendants' alleged agent. (Id. at 32).

As the California Supreme Court held in <u>Boeken</u>, for the purpose of applying the doctrine of *res judicata*, "a dismissal with prejudice is the equivalent of a final judgment on the merits, barring the entire case of action." 48 Cal.4th at 793. Additionally, a

1  dismissal with prejudice also operates as a final judgment on the merits for the purpose of
2  the California law doctrine of *retraxit*.  "A dismissal with prejudice is simply the modern
3  name for a common law retraxit."  O'Hara v. Teamsters Union Local No. 856, 151 F.3d
4  1152, 1159 (9th Cir. 1998) (citing Torrey Pines Bank v. Superior Court, 216 Cal. App. 3d
5  813, 818-21 (1989) (holding that "a retraxit is equivalent to a judgment on the merits and
6  as such bars further litigation on the same subject matter")).  Where the issue decided in
7  the prior adjudication voluntarily dismissed with prejudice is identical to the issue
8  presented in the second action, *retraxit* applies.  Id.   However, *retraxit* does not act as a
9  bar when the cause of action in the subsequent case is different from the subject matter of
10 the original complaint and the issues resolved in the settlement agreement.  Id. (citing
11 Neil Norman, Ltd. v. William Kasper & Co., 149 Cal. App. 3d 942, 948 (1983).

12      Here, the court agrees with Defendants that Plaintiff's settlement and the voluntary
13 dismissal of the Johnson Action with prejudice constitutes a final judgment on the merits.
14 See Boeken, 48 Cal.4th at 793.  Moreover, the court also agrees that the dismissal with
15 prejudice is the equivalent of a final judgment for the purposes of *retraxit*.  However, the
16 court finds that the doctrine of *res judicata* does not bar Plaintiff's current action as
17 Defendants have only successfully established the second element of *res judicata* – the
18 existence of a final judgment on the merits, but failed to establish the first and third
19 elements.

20      First, Defendants have not established that the claims or issues raised in the present
21 action are identical to the claims or issues litigated in the Johnson Action.  Defendants'
22 argument that Plaintiff asserts claims against Defendants "based solely on Johnson being
23 their alleged agent" (motion, p.6) is simply incorrect.  As pointed out by Plaintiff, the
24 claims alleged against Defendants in the complaint are based both on vicarious and direct
25 liability.  Plaintiff alleges that "[Defendants] are liable in this case as control persons of
26 Johnson and under the laws of Respondeat Superior and agency.  Additionally, Global
27 Financial is liable because it had a *direct* relationship with the Wakefileds as a fee based
28 financial adviser." (Compl. ¶18) (emphasis added).  For example, in her seventh cause of

1 action, breach of duty to supervise, Plaintiff alleges that "[Defendants] had a duty to
2 supervise Johnson" and that Defendants did not have an "adequate system of supervision
3 over Johnson and did not in fact adequately supervise him."  (Compl. ¶ 168).  This claim
4 is new and was not alleged in the Johnson Action, and more importantly, this claim is
5 based on a theory of direct liability, not vicarious liability.  Additionally, in support of her
6 third cause of action, tort of another claim for attorney's fees, Plaintiff alleges that
7 "[b]ecause of wrongful actions of [Defendants], Plaintiff has incurred substantial
8 attorney's fees in the earlier related litigation.  Accordingly, Plaintiff is entitled to recover
9 her attorney's fees in this case as damages under the tort of another doctrine."  (Comp.
10 ¶153).  This, again, is a new claim not previously included or litigated in the Johnson
11 Action.  Therefore, the court finds that Defendants have failed to establish that Plaintiff's
12 claims here are identical to the ones alleged in the Johnson Action.

13 Second, Defendants rely on an out-of-circuit case to support their argument that
14 Defendants in this action are in privity with Johnson, the party in the prior proceeding.
15 See Citibank, N.A. v. Data Lease Financial Corp., 904 F.2d 1498, 1502 (11th Cir. 1990)
16 ("[I]t is settled that a judgment exonerating a servant or agent from liability bars a
17 subsequent suit on the same cause of action against the master or principal based solely
18 on respondeat superior.").  However, this case does not help Defendants because as
19 already discussed, Plaintiff's suit here is not "on the same cause of action."  The
20 Complaint also contains allegations of direct liability against Defendants.  Therefore,
21 even if Defendants were able to establish that the dismissal exonerating the alleged agent
22 – Johnson, would bar a suit on the same cause of action against the principals –
23 Defendants, they would still fail in establishing the elements of *res judicata* as Plaintiff's
24 claim here is not the same as the one alleged in the Johnson Action.

25 Therefore, the court finds that *res judicata* does not bar Plaintiff's action against
26 Defendants.  For the same reasons, the court also finds that the doctrine of *retraxit*
27 similarly does not bar Plaintiff's claim against Defendants.  See Neil Norman, Ltd., 149
28 Cal. App. 3d at 948 (holding that *retraxit* does not act as a bar when the cause of action in

the subsequent case is different from the subject matter of the original complaint and the issues resolved in the settlement agreement).

### 2. Collateral Estoppel/Issue Preclusion

Collateral estoppel also precludes a party from litigating in a second action against the same party or its privity an issue that was "actually litigated" in a former proceeding. Lucido v. Superior Court, 51. Cal.3d 335, 341 (1990). "[I]n its collateral estoppel aspect, the doctrine may also preclude a party to prior litigation from redisputing *issues* therein decided against him, even when those issues bear on different claims raised in a later case." Vandenberg v. Superior Court, 21 Cal.4th 815, 828 (1999). As discussed by Justice Moreno in his dissenting opinion in Boeken, although there is some controversy in the matter, the dominant rule in California is that an issue that has been settled by a voluntary dismissal with prejudice does not constitute an issue that has been "actually litigated" for collateral estoppel purposes. Boeken, 48 Cal.4th at 823. But see Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Cas. & Sur. Co. of America, 133 Cal. App. 4th 1319, 1333 (2005) ("[I]f we were to characterize [defendant's] affirmative defenses not as claims but as "issues" for purposes of applying collateral estoppel, we would hold those issues were deemed to have been actually litigated and determined when the identical issues presented by [defendant's] cross-complaint were reduced to a final judgment on the merits.").

 The court finds that the doctrine of collateral estoppel does not bar Plaintiff's claims in this action, even if the court were to apply the minority Alpha Mechanical rule. As already discussed, the settlement of the Johnson Action, which Defendants claim constitutes a final judgment on the merits, did not involve issues "decided against" Defendants, which could bear on the new and different claims raised by Plaintiff in the current action. See Vandenberg, 21 Cal.4th at 828. Alpha Mechanical involved the same two parties, and the party to be estopped had dismissed the other party with prejudice. 133 Cal. App. 4th at 1331-32. Here, the settlement involved a different defendant, and thus the settled issues, even if considered "actually litigated," were not decided against

11

15cv0451 JM(JMA)

Defendants in this action. Therefore, the court finds that collateral estoppel does not bar Plaintiff's claims.

Because the court finds that neither the primary nor the secondary aspect of *res judicata* bars Plaintiff's claims in this action, Defendants' motion to dismiss is DENIED.

IT IS SO ORDERED.

DATED: November 4, 2015

JEFFREY T. MILLER
United States District Judge